UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARIA TOLENTINO, et al.,                          :
                              Plaintiffs,         :
                                                  :         **OPINION AND ORDER**
v.                                                :
                                                  :         15 CV 5894 (VB)
CITY OF YONKERS, et al.,                          :
                              Defendants.         :
--------------------------------------------------------------x

Briccetti, J.,

        Plaintiffs Maria Tolentino and Sabiel Francisco Tena Valera, the administrators of Dario

Francisco Tena's estate, bring this action pursuant to 42 U.S.C. § 1983 against the City of

Yonkers (the "City") and several current and former members of its police department:

Commissioner Charles Gardner, Deputy Chief William Cave, Detective Sergeant Robert Bock

(together, the "city defendants"), former detective Christian Koch, and former officer Neil Vera.[1]

Plaintiffs claim defendants used excessive force against Tena during the execution of a search

warrant, causing him to fall out a window to his death.

        Before the Court are three motions for summary judgment, filed by the city defendants

(Doc. #107), Koch (Doc. #113), and Vera (Doc. #119), respectively.

        For the following reasons, the city defendants' and Koch's motions are GRANTED, and

Vera's motion is DENIED.

        The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

        The parties have submitted briefs, statements of fact pursuant to Local Civil Rule 56.1,

affidavits, and declarations with supporting exhibits, reflecting the following factual background.

---

[1]     Plaintiffs have withdrawn all claims against the remaining five defendants:  Detective
Dennis Molina, and Officers Robert Santobello, Thomas Braig, Christopher McManus, and
Dennis Robertson.  Accordingly, these defendants are dismissed.

This case arises from an unlawfully obtained no-knock search warrant for Tena's residence on the third floor of an apartment building in Yonkers. In the course of the warrant's execution, Tena fell from his apartment window onto the street below and suffered a severe head injury. He died shortly thereafter.

Plaintiffs claim, based primarily on forensic evidence, that one of the officers executing the warrant must have pushed Tena out the window. Alternatively, plaintiffs claim the execution of the illegal, no-knock warrant proximately caused Tena's death regardless of whether he was pushed.

Defendants maintain there is no evidence Tena was pushed—Vera, the only person who says he saw Tena before he fell, claims Tena jumped out the window—and argue the execution of the search warrant did not, in and of itself, proximately cause Tena to fall out the window.

The search warrant was obtained through perjury. Koch prepared and swore to the search warrant affidavit, for which Vera provided information. Vera lied twice, about the identity of a confidential informant upon whom he claimed to rely, and when he identified a photo of the individual (not Tena) he claimed was selling narcotics from Tena's apartment. Koch and Vera were later convicted of perjury for these actions. Koch resigned and Vera was fired.

Based on defendants' application, a judge of the Yonkers City Court signed and authorized a no-knock search warrant on March 21, 2014. A team consisting of Sergeant Bock, Detective Molina, Officers Santobello, Braig, McManus, and Robertson, and Koch and Vera executed the warrant the same day.

Sergeant Bock and Koch broke down the door to Tena's apartment. The officers repeatedly announced, "Yonkers Police, Search Warrant" while entering the apartment. (Vera's 56.1 Statement ¶ 45). Vera entered the apartment first. Officer Santobello followed Vera and

remained a "couple of steps behind" him. (Vera's 56.1 Statement ¶ 51). Vera claims he saw a person running away from him down the hallway to his right, and that he and Officer Santobello followed the person toward a bedroom. Vera claims when he reached the threshold of the bedroom, he saw Tena crouching near a window in the far-left corner. According to Vera, Tena then extended his arms and jumped out the window head-first. Officer Santobello claims he did not lose sight of Vera, but did not see Tena before he went out the window. Both Vera and Officer Santobello maintain Vera never touched Tena.

Defendants and other officers discovered Tena on the ground outside the apartment building lying on his back. As reflected in Tena's autopsy report, he suffered a large fracture to the back of his skull and abrasions to the upper right abdomen, left knee, back, and back of the head. Tena was transported to a hospital, where he died of his injuries about an hour later. The autopsy report initially indicated the cause of death was suicide, but the medical examiner later changed this to "undetermined." (Zelman Decl. Ex. 20).

Plaintiffs claim Tena's injuries indicate he went out the window backwards rather than head-first, as Vera claims, and thus raise a question of fact as to whether Tena was pushed.

Plaintiffs bring claims for excessive force against Koch, Vera, and Sergeant Bock, a claim for excessive force against the City pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978), and supervisory liability claims for excessive force against Commissioner Gardner and Deputy Chief Cave. Plaintiffs have agreed to drop their Section 1983 conspiracy claims.

**DISCUSSION**

I.      Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party.  See id.  The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted).  The mere existence of a scintilla of evidence in support of the non-moving

party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him.  <u>Dawson v. Cty. of Westchester</u>, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  <u>Dallas Aerospace, Inc. v. CIS Air Corp.</u>, 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper.  <u>See</u> <u>Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.</u>, 391 F.3d 77, 83 (2d Cir. 2004).

In deciding this motion, the Court need only consider evidence that would be admissible at trial.  <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 164 F.3d 736, 746 (2d Cir. 1998).

II.    <u>Admissibility of Plaintiffs' Expert's Opinion</u>

As an initial matter, defendants argue the Court should not consider the opinion of Dr. Charles A. Catanese, plaintiffs' expert witness, because it is not admissible under Rule 702 of the Federal Rules of Evidence, as interpreted in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) ("<u>Daubert</u>").  The Court agrees as to one of Dr. Catanese's conclusions, but not the rest.

Under Rule 702, a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  "The proponent of expert testimony

bears the burden of establishing its admissibility by a preponderance of the evidence." Baker v. Urban Outfitters, Inc., 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003).

Daubert identifies four factors for the trial court to consider when deciding whether Rule 702's "reliable principles and methods" prong is met: (i) whether the theory or technique relied on has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (iv) whether the theory or method has been generally accepted by the scientific community. Daubert, 509 U.S. at 593-94. However, these factors do not constitute a definitive checklist or test. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

"[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). Indeed, "[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Id. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002). Thus, to avoid giving mere ipse dixit, an expert must "explain[] the reasoning or methodology" used. Donnelly v. Ford Motor Co., 80 F. Supp. 2d 45, 49 (E.D.N.Y. 1999); accord Roniger v. McCall, 2000 WL 1191078, at *3 (S.D.N.Y. Aug. 22, 2000).

Dr. Catanese, a forensic pathologist, produced a two-page report, which indicates he reviewed Tena's autopsy report, photographs, various medical records, and several witness statements. (Zelman Decl. Ex. 24). Dr. Catanese concludes Tena's large occipital comminuted

skull fracture indicates he struck the ground backwards with his head. Based on this and on the lack of fractures or injuries to Tena's legs and arms, Dr. Catanese further concludes, "[t]his type of impact is consistent with Mr. Tena going out the window backwards and striking the back of his head on the pavement four stories below." (Id. Ex. 24 at 2). The report also notes Tena "had a blunt impact injury to his abdomen which was caused by being struck with or striking a blunt object." (Id.). The last line of the report is, "It is my opinion within a reasonable degree of medical certainty that Mr. Tena went out his bedroom window backwards and struck the pavement four stories below." (Id.).

At his deposition, Dr. Catanese explained he renders opinions "about how [an] injury occurred relative to what the autopsy findings are." (Zelman Decl. Ex. 23 at 19). Dr. Catanese described his methodology as relying on his "general knowledge" and "practical experience" in forensic pathology. (Loomba Decl. Ex. Q at 55). Moreover, he distinguished his methods from that of an accident reconstruction expert, whose conclusions "might be based on physics and engineering and things like that." (Zelman Decl. Ex. 23 at 19). Dr. Catanese does not consider himself an expert in accident reconstruction. (Loomba Decl. Ex. Q at 17).

As a forensic pathologist who reviewed Tena's autopsy report and relevant medical records, Dr. Catanese can opine that Tena's injuries are consistent with (i) his head striking the ground backwards, and (ii) his abdomen being struck with or striking a blunt object. Thus, these conclusions are admissible under Rule 702. Defendants do not argue to the contrary.

However, the report does not explain how Dr. Catanese's methodology—using his knowledge and experience—led him to conclude within a reasonable degree of medical certainty that, because Tena was struck in the abdomen and landed on his back, he must have gone out the window backwards. The report does not, for example, indicate that a person who lands on his

back after falling four stories is more likely to have exited the window backwards than in some other manner, or that a person who falls four stories is unlikely to turn over in the air as he falls. Moreover, Dr. Catanese most likely could not give such explanations without expertise in physics or biomechanical engineering, which he lacks. Thus, Dr. Catanese's conclusion that Tena went out the window backwards is inadmissible because it is "connected to existing data only by [his] ipse dixit." See Gen. Elec. Co. v. Joiner, 522 U.S. at 146.

Accordingly, Dr. Catanese may testify at trial that Tena's injuries were caused by his head striking the ground backwards and his abdomen being struck with or striking a blunt object, but not that Tena was facing backwards when he fell out his apartment window.

III.    Excessive Force Claim Against Vera

Vera argues he is entitled to summary judgment because there is no evidence he pushed Tena out the window.

Although it is a close call, the Court disagrees.

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)). "The Fourth Amendment test of reasonableness 'is one of objective reasonableness.'" Bryant v. City of New York, 404 F.3d 128, 136 (2d Cir. 2005) (quoting Graham v. Connor, 490 U.S. at 399). Therefore, "the inquiry is necessarily case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." Tracy v. Freshwater, 623 F.3d at 96. This assessment may include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

Graham v. Connor, 490 U.S. at 396.

Based on the autopsy, Dr. Catanese can opine Tena was struck by a blunt object in his abdomen and landed on his back after falling from the window. A reasonable jury could thus conclude someone struck Tena in the abdomen, causing him to fall backwards out the window and land on his back.

Vera admits he was in Tena's presence just before Tena fell. Thus, because there is a question of fact as to whether someone caused Tena to go out the window, there is also a question of fact as to whether Vera is that person. Moreover, if Vera pushed Tena out the window, there is certainly a jury question as to whether that was excessive force.

Accordingly, summary judgment as to Vera is not warranted.

IV.    Excessive Force Claims Against Koch and Sergeant Bock

Plaintiffs do not claim Koch or Sergeant Bock were personally involved in pushing or otherwise forcing Tena out the window. Rather, plaintiffs claim these defendants used excessive force by executing an illegal no-knock warrant to search Tena's apartment.

This theory of liability fails as a matter of law for lack of proximate cause.

"Civil actions brought under § 1983 are analogous to state common law tort actions." Townes v. City of New York, 176 F.3d 138, 146 (2d Cir. 1999). For this reason, "[a] § 1983 action, like its state tort analogs, employs the principle of proximate causation." Id. It is not enough to show a plaintiff's injury would not have occurred "but for" a defendant's actions. Id. at 147. Rather, the Court must consider the "foreseeability or the scope of the risk created by the predicate conduct" and whether there was "some direct relation between the injury asserted and

the injurious conduct alleged." <u>Cty. of Los Angeles v. Mendez</u>, 137 S. Ct. 1539, 1548-49 (2017) (quoting <u>Paroline v. United States</u>, 134 S. Ct. 1710, 1719 (2014)).

The proximate cause analysis in a Section 1983 action may involve determining whether an intervening or superseding cause "break[s] the causal chain" between the defendant's actions and the plaintiff's injury. <u>Jeffries v. Harleston</u>, 52 F.3d 9, 14 (2d Cir. 1995). "Generally, an intervening intentional or criminal act is a type of superseding cause that severs the liability of the original tort-feasor." <u>Deskovic v. City of Peekskill</u>, 673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) (internal quotation omitted). Nevertheless, "an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." <u>Warner v. Orange Cty. Dep't of Probation</u>, 115 F.3d 1068, 1071 (2d Cir. 1996). A third party's actions are not foreseeable if they are "different in kind than those which would normally have been expected from the original wrongdoing." <u>Martin v. City of New York</u>, 793 F. Supp. 2d 583, 588 (E.D.N.Y. 2011) (internal quotation omitted).

As an initial matter, plaintiffs' claim, that defendants are liable for Tena's death because of the way they executed an illegal, no-knock warrant on his home, is an unreasonable entry claim, not an excessive force claim. <u>See</u> <u>Cty. of Los Angeles v. Mendez</u>, 137 S. Ct. at 1547 ("An excessive force claim is a claim that a law enforcement officer carried out an unreasonable seizure through a use of force that was not justified under the relevant circumstances. It is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry."). Indeed, the only force Koch and Sergeant Bock used was on Tena's door, and plaintiffs do not seek to recover damages for the broken door. However, construing the complaint in the light most favorable to plaintiffs, although their claims are labelled "excessive force claims," they encompass unreasonable entry as well. (<u>See</u> Compl. ¶

98 ("The aforesaid actions of said defendants were an unreasonable and unnecessary use of excessive force and unlawful entry into . . . Tena's residence and home.")).  Thus, to recover on the unreasonable entry claim, plaintiffs must show the entry itself proximately caused injury to Tena.  Cty. of Los Angeles v. Mendez, 137 S. Ct. at 1548.

Even if Koch and Sergeant Bock's no-knock entry into Tena's apartment violated his Fourth Amendment rights, there is simply no evidence this entry proximately caused his death.

On the one hand, if, as Vera claims, Tena decided to jump out the window, this was an "intervening intentional . . . act" that broke the chain of proximate causation.  See Deskovic v. City of Peekskill, 673 F. Supp. 2d at 161; see also Cameron v. City of Pontiac, 813 F.2d 782, 786 (6th Cir. 1987) (police officers shooting at a fleeing suspect did not proximately cause his death when he chose to leap over a fence onto a highway, where he was struck by a car).  On the other hand, if, as plaintiffs claim, Vera pushed or forced Tena out the window, this "intervening . . . criminal act" broke the chain of proximate causation with respect to the actions of his fellow officers.  See Deskovic v. City of Peekskill, 673 F. Supp. 2d at 161-62 (corrections officer's assault of plaintiff was not a foreseeable consequence of other law enforcement defendants' actions leading to plaintiff's incarceration).  Either way, the execution of the warrant was not the proximate cause of Tena's death.

Plaintiffs argue defendants' entry into Tena's home "set in motion" the events causing Tena to go out the window.  (Doc. #139 at 6; Doc. #140 at 8 (citing Martin v. City of New York, 793 F. Supp. 2d at 586)).  But the "set in motion" language in Martin is consistent with the doctrines of proximate and intervening causes.  The court in Martin held the defendants' actions were "a link in the chain of events resulting in plaintiff's . . . injuries" but found that an

intervening cause broke the chain of <u>proximate</u> causation.  <u>Martin v. City of New York</u>, 793 F. Supp. 2d at 587.  Thus, <u>Martin</u>'s reasoning does not require a different result.

Plaintiffs also argue Tena's injuries were a foreseeable consequence of executing a no-knock search warrant—which anticipates the inhabitants of a dwelling may forcibly resist law enforcement—particularly because defendants knew they lacked probable cause.

The Court is not persuaded.

Even assuming a no-knock warrant is likely to meet violent or armed resistance from the dwelling's inhabitants, no one claims that is what happened here.  Tena was not killed in, for example, a shootout with police under the mistaken belief his home was being invaded by criminals.  Rather, he fled from defendants to the back bedroom and either jumped out the window or was pushed by Vera in a show of unprovoked excessive force.  Both intervening causes are attenuated enough from the entry as to be "different in kind than those which would normally have been expected from the original wrongdoing."  <u>Martin v. City of New York</u>, 793 F. Supp. 2d at 588 (internal quotation omitted).

Nor is it enough for plaintiffs to say the execution of a no-knock warrant generally creates a dangerous situation in which third parties can cause serious injury.  This is because proximate causation requires the injury to be a "likely consequence" of the constitutional violation at issue, not merely a possible one.  <u>Martin v. City of New York</u>, 793 F. Supp. 2d at 588; <u>see</u> <u>also</u> <u>id.</u> at 588-89 ("That inmate-on-inmate assaults happen in prison is as foreseeable as accidents happening to people who drive cars on accident-prone highways.  This sort of 'foreseeability' does not equate to causality. . . .  Subsequent independent intervening acts or omissions are the substantial factors in causing injury in any subsequent highway accident or, similarly, to an arrestee assaulted in the custody of someone other than the arresting officer.").

Finally, the Court sees no reason why it is any more foreseeable that a no-knock warrant without probable cause is likely to result in violence or serious injury than it is for a no-knock warrant with probable cause, and plaintiffs do not explain this point.

Accordingly, summary judgment as to Koch and Sergeant Bock is warranted.

V.    Supervisory Liability Claims Against Commissioner Gardner and Deputy Chief Cave

Plaintiffs bring claims for supervisory liability against Commissioner Gardner and Deputy Chief Cave with respect to the other defendants' alleged use of excessive force. These claims fail for lack of these defendants' personal involvement in the alleged constitutional violations that proximately caused Tena's injuries.

Notwithstanding a defendant's position as a supervisor, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation omitted). Personal involvement means defendants (i) participated directly in the alleged constitutional violation; (ii) were made aware of the wrongs and failed to remedy them; (iii) created or allowed a policy or custom under which unconstitutional practices occurred; (iv) were grossly negligent in supervising subordinates who committed the wrongful acts; or (v) exhibited deliberate indifference to a plaintiff's rights by failing to act on information indicating unconstitutional acts were occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[2]

---

[2]    The Second Circuit has noted, without deciding, that the five types of liability articulated in Colon v. Coughlin may not all have survived the Supreme Court's holding in Ashcroft v. Iqbal. See Reynolds v. Barrett, 685 F.3d 193, 205 n.14 (2d Cir. 2012). The Court need not decide this issue because, as explained further below, there is no evidence either Gardner or Cave was personally involved in any of these five ways with respect to Vera allegedly forcing Tena out the window.

As explained supra Part IV, the execution of the search warrant itself did not proximately cause Tena's injuries. Thus, even if plaintiffs were to show Commissioner Gardner and/or Deputy Chief Cave were personally involved in one of the ways described in Colon, this involvement would not be the proximate cause of Tena's injuries.

Moreover, plaintiffs have submitted no evidence showing Commissioner Gardner and/or Deputy Chief Cave were personally involved in Vera's alleged decision to force Tena out the window. Plaintiffs have not submitted evidence tending to show Gardner or Cave (i) were personally involved in the alleged use of force; (ii) were made aware of Vera's use of similar force on other occasions but failed to remedy it; (iii) created or allowed a policy or custom under which officers like Vera would use force of the type plaintiffs claim Vera used when pushing Tena out the window; (iv) were grossly negligent in supervising Vera in a way that led to his use of excessive force; (v) were deliberately indifferent to Tena's right to be free of the sort of excessive force Vera allegedly used against him;[3] or (vi) had any other personal involvement with Vera's alleged use of force within the meaning of Colon.

---

[3]     Plaintiffs argue Gardner and Cave were grossly negligent in supervising Vera, and/or were deliberately indifferent to the constitutional rights of others, because they knew the results of a Department of Justice ("DOJ") investigation into Yonkers Police Department practices, including "the use of force" and "warrants and warrant applications." (Doc. #140 at 22 (citing Zellman Decl. Ex. 21)). Plaintiffs argue this investigation put Gardner and Cave on notice of the need to supervise Vera's and Koch's warrant application more closely (id.), which the Court has already held did not proximately cause Tena's injuries. To the extent plaintiffs also use the DOJ report to argue Gardner and Cave were deliberately indifferent or grossly negligent in supervising Vera's use of force, or the use of force in similar situations, it is not apparent how the report would have alerted Gardner and Cave to the risk of this type of constitutional violation. The report does not address situations similar to the one in this case, or address the use of force during the execution of search warrants. Thus, this report does not show Gardner's and Cave's grossly negligent supervision of, or deliberate indifference to, the allegedly unconstitutional conduct that may have proximately caused Tena's death.

Accordingly, summary judgment as to Commissioner Gardner and Deputy Chief Cave is warranted.[4]

VI.    Monell Claim Against the City of Yonkers

Plaintiffs contend the City of Yonkers is liable for its officers' constitutional violations because it failed to train them properly. This claim also fails for lack of proximate cause.

A municipality is liable under Section 1983 only "when execution of a [municipal] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [plaintiff's] injury." Monell v. Dep't of Soc. Servs., 436 U.S. at 694. Thus, plaintiffs must prove a municipal policy or custom proximately caused the alleged constitutional violation. Cash v. Cty. of Erie, 654 F.3d 324, 342 (2d Cir. 2011).

As explained supra Part IV, the execution of the search warrant did not proximately cause Tena's injuries. Thus, even if plaintiffs were to show the City's failure to train caused the search warrant to be executed, they would not have shown this failure caused Tena's injuries.

Moreover, plaintiffs have not raised a genuine issue of material fact as to whether the City's failure to train Vera caused him to use excessive force on Tena by pushing or forcing him out the window. Plaintiffs point to the fact that Vera had never executed a search warrant before (Pls.' 56.1 Statement ¶ 40) and contend Vera was not trained in "how to conduct narcotic investigations or to write and execute search warrants." (Doc. #140 at 18). But virtually all of plaintiffs' arguments on this point (see id. at 15-19) focus on the way Vera conducted his investigation into possible drug activity at Tena's apartment and lied to procure the search warrant. Plaintiffs do not offer evidence linking the City's failure to train Vera with the way Vera conducted himself inside Tena's apartment. Thus, plaintiffs have not put forth more than a

---

[4]    Although the complaint does not bring a supervisory liability claim against Sergeant Bock, plaintiffs argue Bock is liable as a supervisor for the same reasons as are Gardner and Cave. The Court rejects these arguments for substantially the same reasons.

mere "scintilla" of evidence connecting City policies or customs to Vera's alleged use of excessive force. See Dawson v. Cty. of Westchester, 373 F.3d at 272.

Accordingly, summary judgment is warranted as to the Monell claim against the City.

## CONCLUSION

The city defendants' motion for summary judgment (Doc. #107) and Koch's motion for summary judgment (Doc. #113) are GRANTED.

Vera's motion for summary judgment (Doc. #119) is DENIED.

The Clerk is instructed to terminate the following defendants: the City of Yonkers, Commissioner Charles Gardner, Deputy Chief William Cave, Detective Sergeant Bock, Christian Koch, Detective Dennis Molina, and Officers Robert Santobello, Thomas Braig, Christopher McManus, and Dennis Robertson.

By November 2, 2017, the remaining parties shall submit a joint pretrial order in accordance with the Court's Individual Practices.

Counsel for the remaining parties shall attend a case management conference on November 3, 2017, at 9:30 a.m., at which time the Court will set a trial date and a schedule for pretrial submissions.

The Clerk is instructed to terminate the motions. (Docs. ##107, 113, 119).

Dated: October 2, 2017
     White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge